NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

RIGOBERTO MENDEZ-HERNANDEZ,
*Appellant.*

No. 1 CA-CR 21-0366
FILED 3-8-2022

Appeal from the Superior Court in Yavapai County
No. P1300CR201801497
The Honorable Krista M. Carman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Deborah Celeste Kinney
*Counsel for Appellee*

Law Office of Nicole Countryman, Phoenix
By Nicole Countryman
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge Jennifer M. Perkins joined.

---

**W E I N Z W E I G,** Judge:

¶1        Rigoberto Mendez-Hernandez appeals his convictions and sentences for four counts of sexual conduct with a minor, one count of attempt to commit sexual conduct with a minor and one count of molestation of a child.  For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        We view and thus recount the facts in the light most favorable to sustaining the jury's verdicts.  *See State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).  And here, we use a pseudonym to protect the minor victim's identity.

¶3        Jane's mother was sent to prison in 2009 when Jane was about five years old.  And so, Jane was forced to live with her uncle, Mendez-Hernandez.  Nine years later, Jane ran away from Mendez-Hernandez's home and appeared unannounced at her cousin's home.  Asked by her cousin what happened, Jane answered that Mendez-Hernandez "was touching her in her private area."  The cousin called the police.  Jane minimized Mendez-Hernandez's misconduct at first, but eventually sat for a forensic interview and revealed that her uncle had been sexually abusing her since she moved into his home. Jane described seven instances in which Mendez-Hernandez sexually abused her, all from between ages eight and fifteen.  She estimated there were 30 to 50 encounters in all, but said it was hard to keep track.

¶4        Jane's claims were corroborated by the eyewitness testimony of her brothers, who saw Mendez-Hernandez sexually abuse Jane. Mendez-Hernandez confessed, but said it was consensual.

¶5        The State charged Mendez-Hernandez with four counts of sexual conduct with a minor, class 2 felonies, one count of attempted sexual conduct with a minor, a class 3 felony, and two counts of molestation of a child, class 2 felonies, all involving a victim under fifteen years old.  The

State further alleged the offenses constituted dangerous crimes against children.

**¶6**        At trial, the forensic interviewer testified that she evaluates juvenile victims in a manner that avoids coerced or suggested responses. As part of the forensic interview, she instructs victims to tell the truth and ask for clarification if they feel confused. The interviewer avowed that she used these techniques in Jane's interview. When Jane testified, she initially stated that she remembered participating in a forensic interview. When pressed, however, Jane testified that she lacked any clear memory of the interview. Jane confirmed that she reviewed a recording of the interview before trial, but it had not refreshed her recollection. She avowed that her memory would have been better at the time of the interview. Jane testified that the abuse occurred many times over a long period, and she had done her best to forget it in the years leading up to trial.

**¶7**        After Jane testified, the State moved for permission to play Jane's recorded forensic interview for the jury, arguing it was a recorded recollection under Arizona Rule of Evidence 803(5). The court agreed, reasoning that although Jane answered "yes" when asked if she remembered portions of the interview, she ultimately confirmed that she had no real memory of the interview and could not accurately testify about details of the abuse. The jury watched a portion of Jane's forensic interview. The court did not admit the interview as an exhibit for the jury's use during deliberations.

**¶8**        The jury returned guilty verdicts on all counts, except for one count of molestation of a child. The superior court sentenced Mendez-Hernandez to an aggregate term of 67 years' imprisonment. Mendez-Hernandez timely appealed. We have jurisdiction. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A).

## DISCUSSION

**¶9**        Mendez-Hernandez argues the superior court erred by allowing the State to play Jane's forensic interview at trial. He argues the interview constituted inadmissible hearsay. We will not disturb the court's ruling on the admissibility of hearsay evidence absent a clear abuse of discretion. *See State v. Valencia*, 186 Ariz. 493, 498 (App. 1996).

**¶10**        One exception to the rule against hearsay is a recorded recollection under Rule 803(5). A record qualifies as a recorded recollection if it "(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the

witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." Ariz. R. Evid. 803(5). If these requirements are satisfied, the record may only be read into evidence, not received as an exhibit for the jury's use during deliberations, unless offered by an adverse party. *Id.* We have held that a recording of a victim's forensic interview may qualify as a recorded recollection. *State v. Martin*, 225 Ariz. 162, 165, ¶¶ 11–12 (App. 2010).

¶11 The superior court did not err when it allowed the State to play Jane's forensic interview for the jury. Jane's memory was unclear and she could not recall the events well enough to testify "fully and accurately" about them. *See* Ariz. R. Evid. 803(5)(A). She could not describe what had happened to her, only responding "yes" to leading questions. She could remember neither the forensic interview nor the acts themselves. She avowed her memory was better at the time of the interview and explained she'd been trying to forget about the abuse and move on. *See* Ariz. R. Evid. 803(5)(B). The forensic interviewer also testified that she interviewed Jane in a manner that avoids suggested responses, informs victims they must tell the truth, and promotes a noncoercive atmosphere. *See* Ariz. R. Evid. 803(5)(C). Before playing the interview for the jury, the State redacted all irrelevant or prejudicial information from the recording. And last, the interview was not admitted as an exhibit for the jury's use during deliberations. The interview therefore satisfied the requirements of Rule 803(5).

¶12 Mendez-Hernandez also argues that Jane "never once testified that she was truthful and accurate when she gave her statements to the interviewer." But this is not what the rule requires. Rule 803(5)(C) merely requires that the record "accurately reflects the witness's knowledge." A victim does not need to expressly testify that their statements at the time of the recording are accurate, so long as there are facts which support an inference of accuracy. *See State v. Gianotta*, 248 Ariz. 82, 84, ¶¶ 12-13 (App. 2019). Jane confirmed that what she told interviewers had actually happened. And the social worker who interviewed Jane explained the unique procedures used in forensic interviews, including building a rapport, asking the child to tell the truth and asking open-ended questions. These procedures bolster the trustworthiness of forensic interviews. We discern no error.

**CONCLUSION**

¶13        We affirm Mendez-Hernandez's convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA